## W. C. TRABUE ET AL *v.* SANDERS & WILLIAMS.

**Mines and Mining—Removal of Coal Adjacent to Main Entry—Damages.**

Where the proof shows that a lead in a mine would not terminate at a point contemplated by the parties to a contract for lease of a mine, but at a point wholly impracticable to reach the coal to be mined, nominal damages for destruction thereto only could be recovered.

**Same—Defense—Plea that Better Coal Was Opened Up.**

A plea, in defense to a suit for violation of a contract, that by reason of opening up of a new passage way, and closing of the old one, in that more and better coal was thus left than was taken from the pillars supporting the portion of the entry destroyed, held not good.

**Same—Betterment to Owner of Mine—Duty of Lessee.**

It is the duty of the lessee to work a leased mine as not to render unnecessarily difficult, the mining of such coal as they might choose or be compelled to leave at the expiration of their term.

**Same—Mistake in Lease—Exceptions Reserved—Covenant.**

A lease permitting the lessee to mine coal, but to preserve the "main entry" by leaving pillars sufficient on either side to support it, and with "this exception" to remove all coal, etc., held that the words in the form of an exception amounted to a covenant to preserve the supports and leave open the passage way as much as to preserve the entry itself.

**Pleading—Demurrer to Petition For Damages For Removing Supports to a Coal Mine.**

A petition seeking to recover damages for the removal of pillars, stipulating "to preserve the main entry by leaving pillars on either side sufficient to support it" is not demurrable, though the plaintiffs could not recover as in trover and conversion.

**Same—Mines and Mining—Criterion of Damages.**

As a criterion of damages, the difference in the value of the mines, in the condition they were restored to plaintiff on the day the lease expired, and what their value would have been in case "pillars sufficient to preserve and leave open" the main entry, had been left as stipulated.

**Same.**

The enquiry should be confined to the difference in value on the day the lease expired, and should exclude any consideration of the value of the entry as a passage-way.

APPEAL FROM M'LEAN CIRCUIT COURT.

October 2, 1871.

OPINION OF THE COURT BY JUDGE LINDSAY:

On the 7th of July, 1858, appellees Sanders and Williams leased from the heirs of C. H. Trabue, deceased, for the term of five years certain coal mines situated in the county of Hancock.

By the terms of the written agreement between the contracting parties the lessees secured the privilege of taking all .or any part of the coal from the mines therein described, within the term of five years, and among other things they bound themselves to preserve the "Main Entry" into what was known as the lower bank by leaving pillars on either side "sufficient to support the same, and leave it open. With this exception the parties of the first part *had* the right to draw and remove all the pillars and mine all the coal from the lands of the parties of the second part."

In February, 1866, the Trabues brought their suit in the Jeffercon court of common pleas, alleging that their lessees had broken their said covenant by failing to preserve the "main entry" and by removing the pillars necessary to support it, and converting the coal mined from such pillars to their own use, by reason thereof they claimed that the entry was wholly destroyed for the distance of over three hundred yards, and thereby deprived of the use of their mines, and also of a road or pass-way by which to reach other valuable mines, and they prayed judgment for damages in the sum of $75,000. Two amendments were afterwards made to their petition, setting out in detail the specific reasons upon which they based their claim for damages, but not materially modifying their cause of action as originally set out.

Appellees, by their answer, admit to the mining of the coal composing the pillars supporting a portion of what was generally known as the "main entry" into the lower bank, and that they thereby closed a portion of such entry, but they denied that the part thus destroyed lead to any coal in the Trabue mines, or to coal in any adjacent mines belonging to the Trabue heirs or to any one else. They claimed that the term "main entry," as used in the lease, was not intended to be descriptive of any particular

entry, from the mouth to the back of the mines, but as descriptive of what might prove to be the most available passway leading into the body of the coal then remaining in the mines. They concede, however, that all parties at the time of the execution of the written contract regarded the entry, a part of which they destroyed, as the passway leading into that portion of the mines in which coal was to be found, but allege that this belief, and consequently the insertion of the term "main entry" into the agreement, grew out of the mutual mistake of all the parties as to its real location in the hill. They admit that the intention of the covenant for its preservation was to secure a road connecting with what is known as Lead Creek valley by a tunnel leading through appellant's mines, terminating in that valley at or near the base of the hill in which the mines are situated, but they claim that they ascertained after they began work that this tunnel, if extended, would terminate in the summit of the hill instead of at its base. That for this reason they mined the coal composing the pillars supporting the back part of the entry, and left certain other entries open, and thereby effectuated the true intention of the contracting parties. They denied that they had damaged the mines by drawing the pillars, and insisted that they benefitted them by the manner in which they carried on their mining operations. They also pleaded a release from one of the lessors.

Appellees, before answer, demurred to the original and amended petition of the Trabues, and various motions to strike out portions of the pleadings were made by both appellees and appellants. Finally, appellees offered to file an amended answer setting up the statute of limitations as a bar to appellant's claim for the conversion of the coal taken out of the pillars supporting the main entry.

The action was transferred by change of venue to Hancock county, and afterwards to Breckinridge, and finally to McClain county, where it was submitted upon the pleadings, and the evidence to the judge of the circuit court to be determined by him without the intervention of a jury.

By his judgment the second amended petition was stricken from the files, and the demurrer was sustained to so much of the petition as amended, which sought to recover for any other damage than that growing out of the destruction of the "main entry" considered as a road or passway, and finally dismissed the petition and amendments, giving to appellees a judgment for their costs.

We do not regard it necessary to review in detail the voluminous testimony presented by the record. Considering the evidence as set out in the bill of exceptions and disregarding the affidavits relied upon by appellees as establishing the incorrectness of such bill, we conclude that the "main entry," in so far as it might have been used as a road leading to any coal in the mines of appellants, or as a passway to Lead Creek valley, was comparatively valueless. It is not shown with any reasonable degree of certainty that coal in such quantities and of such quality as will probably induce parties to work the mines, exists in the lands lying on Lead creek. And it is satisfactorily proved that the coal in the mines of appellants was practically exhausted in the vicinity of that portion of the main entry which appellees destroyed. We are also satisfied that even if coal exists in the region of Lead creek the entry destroyed would have terminated so near the summit of the hill as to have made it wholly impracticable to reach such coal by that route. It follows, therefore, that in so far as appellants sought to recover for the value of that part of the entry destroyed, considered merely as a road or passway, they were entitled at most to no more than nominal damages. Whether they can recover for the removal of the pillars on account of their intrinsic value, disconnected from any idea of the preservation of the entry, must be determined by ascertaining the legal construction of the covenant under consideration.

By the contract appellees, in general terms, acquired the right to draw all the pillars and mine all the coal from the leased premises, but they obligated themselves to preserve the "main entry" by *leaving pillars on each side sufficient to support the same and leave it open."* Their right to draw all the pillars and to mine all the coal, was to be exercised within the five years during which the lease continued. The absolute title to the coal was not vested in the lessees. They had merely the right to take it, or so much as they might choose, or be able to take within the prescribed time. All that they might leave at the expiration of their term, by the terms of the contract and as matter of law reverted to the lessors Hence the plea that more and better coal was left in the mines than was taken from the pillars supporting that portion of the entry destroyed, we do not regard as an available defense. Neither are appellees exempt from liability for the breach of their covenant because they benefitted the appellants in other respects by the

judicious manner in which they may have conducted their mining operations.  It was their duty to so work the mines as to not render unnecessarily difficult the mining of such coal as they might choose or be compelled to leave at the expiration of their term. The alleged mistake of the parties as to the location in the hill of the main entry is also insufficient as a defense, in so far as the intrinsic value of the pillars destroyed is concerned.  It is not pretended that the term "main entry" was inserted by mistake, but that the parties were induced to insert it, because they were all mistaken as to the existence of a certain other fact.  Possibly if this mistake had not existed the contract would have been different, but as the parties, when the mistake was discovered, did not change it, and as those who would have been benefitted by the change did not ask to have it changed, we are of the opinion that appellees were bound to comply with their covenant as it was written.  The principal object sought to be attained by the preservation of the entry was to secure a road or passway to Lead Creek valley, but the parties chose to stipulate the exact manner in which the entry should be preserved, and the language used makes it manifest that importance was attached to the manner of preservation as well as to the property to be preserved.  The covenant is that the "main entry" should be preserved by leaving pillars sufficient on either side to support it, and leave it open, and with "this exception" the appellees had the right to draw and remove all the pillars and mine all the coal from the leased premises.  No right was acquired to remove such pillars as might be necessary to preserve and leave open the designated entry, but upon the contrary, it was stipulated that such necessary pillars should not be removed.  With the exception of pillars sufficient to accomplish the desired end, they had the right to draw and remove all the rest.  "Words in the form of an exception may amount to a covenant; as where a lessee agreed that he would 'during the term plough, sow, manure and cultivate the devised premises (except the rabbit-warren and sheep-walk) in a regular and due course of husbandry according to the custom of the county.'  The exception was held to be as much of an agreement as the rest of the stipulation in which it was placed, and to impose a direct obligation not to plough the rabbit-warren and sheep-walk. So were the words that A should take x x x without taking more than was necessary."  *Taylor on Landlord and Tenant, section 248.*  The exception of pillars sufficient to support

and leave open the main entry was, in this case, as much an agreement as the stipulation to preserve the entry itself.. The failure of appellees to leave the leased premises in the condition agreed upon was a violation of their covenant, for which they are responsible in damages. We have before stated that the evidence warrants the conclusion that the entry was comparatively valueless as a passway, and as this question was submitted to the judge without the intervention of a jury, and considered by him, his judgment as to this branch of the case will not be disturbed. We do not decide that appellants were not on this account entitled to nominal damages and to a judgment for their costs, nor that this court will not reverse where a judgment refusing nominal damages and costs is palpably against the weight of the evidence, but in this case as the judgment must be reversed for another reason, its affirmance as to this branch of the controversy cannot prejudice the substantial rights of the appellants.

The court below erred in sustaining the demurrer to the petition and amended petitions of appellants in so far as they claimed damages for the removal of the pillars excepted by the terms of the lease. They were not entitled to recover as in trover and conversion, but as the facts set out entitled them to a judgment for the actual damages sustained by reason of the removal of the excepted pillars, under the provisions of the Code of Practice the general demurrer should have been overruled. To this extent, the judgment is reversed, and upon the return of the cause the court should require the parties to so shape their pleadings, as to present the question as to the difference in the value of the mines in the condition they were restored to plaintiffs on the day the lease expired and what their value would have been in case "pillars sufficient to preserve and leave open" the main entry had been left as stipulated. The enquiry should be confined to the difference in value on the day the lease expired, and should exclude any consideration of the value of the entry as a road or passway. As the right of the appellants to recover grows out of the violation of a covenant contained in the written agreement of the parties, and is not in the nature of an action of trover and conversion, the five years statute of limitations does not apply. The release executed by W. C. Trabue applies alone to the rental agreed to be paid and presents no bar to this action.

The cause is remanded for a new trial and for further proceedings consistent with this opinion.

*Bullitt, Harris for appellant.*

*Williams, for appellees.*